IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MATTHEW FISHER, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. |
| | § | 4:13-cv-00479-RC-ALM |
| SOUTHWEST CREDIT SYSTEMS L.P., | § | |
| Defendant. | § | |

DEFENDANT SOUTHWEST CREDIT SYSTEMS LP'S
MOTION FOR SUMMARY JUDGMENT

COMES NOW, Southwest Credit Systems L.P. ("Southwest"), Defendant herein, and

files this Motion for Summary Judgment:

## I.
## BACKGROUND FACTS

1.     Plaintiff filed the Complaint in this case on August 21, 2013.  (Doc. No. 1).  The

Complaint alleges that Southwest violated the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 *et seq.* (the "FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227, et

seq. (the "TCPA"), by placing calls using an automated telephone dialing system ("ATDS")

and/or using an artificial or prerecorded voice to Fisher's cellular phone in an attempt to collect a

consumer debt from a person with the last name "Adler".  (Doc. No. 1 ¶¶ 9-14).  The Complaint

alleges that Southwest continued to place automated calls to Fisher despite his request that the

calls cease because Mr. Adler could not be reached at his number.  (Doc. No. 1 ¶¶ 13-14).

Southwest was unable to locate any accounts with the name of Adler in its records.  Southwest

requested Plaintiff's telephone number in an effort to investigate Plaintiff's allegations.  Plaintiff

finally relented and produced Plaintiff's reported phone number of (214) 882-3474.  Defendant's

Appendix ("Def. App.") at 7.  Southwest's records indicate that there was never any call to

Plaintiff, or to the number provided by Plaintiff.  Def. App. at 2.  Further, Southwest does not

have an account with Plaintiff.  *Id.*  Southwest now moves the Court to render judgment on Plaintiff's claims and grant its Motion for Summary Judgment.

## II.
## SUMMARY JUDGMENT STANDARD

2.     The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). Additionally, a motion for summary judgment serves to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). A finding for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Celotex*, 477 U.S. at 372. When a defendant moves for summary judgment, it may either (a) submit summary judgment evidence negating the existence of a material element of the plaintiff's claim, or (b) show there is no evidence to support an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 322-25. Thus, the movant may identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). This can be done by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

3.     If the movant meets this initial burden, the non-movant then must introduce evidence establishing that there is a genuine issue of material fact. *Matsushita*, 475 U.S. at 585-86. In making the decision whether a fact issue exists, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v.*

*Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

### III.
### ARGUMENT AND AUTHORITIES

**A.     Plaintiff Does Not Have Standing to Bring the Current Lawsuit Because He Cannot Prove that Southwest Was Pursuing a Consumer Debt.**

4.      The principle reason that Southwest cannot be held liable to Plaintiff for any violation of the FDCPA is that he cannot establish that Southwest was attempting to collect a consumer debt. Congress enacted the FDCPA to protect consumers from unfair *debt* collection practices. *Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 460 (4th Cir. 1992), *cert. denied*, 506 U.S. 905, 113 S.Ct. 298; 15 U.S.C. § 1692(e) (emphasis added).  Consequently, it is well-established that "a threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'"  *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3rd Cir. 1987); *see also Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994); *Matter of Mayer*, 199 B.R. 616 (E.D. La. 1996).

5.      "Debt" is defined by the FDPCA as including "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).  Thus, the FDCPA applies to only those debts incurred for business purposes, not business purposes. *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992).

6.      The burden of proof for establishing the nature of a debt is on the Plaintiff.  *See, e.g., Clark v. Brumbaugh and Quandahl, P.C., LLO*, 731 F. Supp. 2d 915, 921 (D. Neb. 2010) (denying Plaintiff's motion for summary judgment because her failure to prove debt was consumer debt was "essential element of her claim"). If a plaintiff is unable to establish that the

underlying debt was consumer, summary judgment is proper.  *Garcia v. LVNV Funding LLC*, 2009 WL 3079962, at *5 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A good example of this rule in action can be found in *Garcia*.  In that case, the plaintiff alleged that the debt in question was not his and he failed to conduct any discovery that would prove how or why the debt was incurred.  *Id*.  Consequently, the defendants argued that plaintiff was incapable of proving that the debt in question was consumer debt and, thus, the FDCPA cannot apply.  *Id*.  The presiding magistrate agreed, stating that because plaintiff could not prove the nature of the underlying debt, he could not prove an essential element of his FDCPA claim.  *Id*.  Accordingly, he recommended to the District Court that summary judgment be granted in favor of the defendants.  *Id*.

7.      The present case is easily analogized to the *Garcia* case.  Plaintiff is not alleging that Southwest attempted to collect any debt attributed to him and puts forth no evidence of the nature of the debt.  Because Plaintiff has shown no evidence that the underlying debt attempted to be collect is a consumer debt, Plaintiff has no standing under the FDCPA.  As such, judgment should be rendered on his FDCPA claims.

**B.      Even if Plaintiff Does Have Standing, He Fails to Provide Sufficient Evidence of an FDCPA Violation and Does Not Survive Summary Judgment.**

8.      Based on these allegations, Plaintiff alleges that Southwest violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. No. 1 ¶1). Generally, Plaintiff claims that Southwest violated § 1692d "by engaging in conduct the natural consequence of which is to harass, oppress, or abuse" him in connection with the collection of a debt. *See id.* at ¶18 (quoting 15 U.S.C. § 1692d). Specifically, Plaintiff cites § 1692d(5) of the FDCPA which prohibits "causing a telephone to ring…repeatedly or continuously with [the]

intent to annoy, abuse, or harass" Plaintiff. *Id*. at ¶19 (quoting 15 U.S.C. § 1692d(5)). He is also alleging violations of § 1692f in that Southwest used unfair and unconscionable means to collect the debt. *Id*. at ¶20 (quoting 15 U.S.C. § 1692f). On April 11, 2014, Plaintiff filed his First Amended Complaint. (Doc. No. 16). In his First Amended Complaint, Plaintiff add two new causes of action under the FDCPA. *Id*. at ¶¶30-31. These new causes of action are for violations of 15 U.S.C. §1692b(3) and §1692c(b). *Id*. As a result of these alleged violations, Plaintiff is seeking actual damages, statutory damages of $1,000 per violation, punitive damages, and costs of litigation and recovery of attorney's fees.

9.      Plaintiff's FDCPA claims are based on the same alleged conduct – that Southwest constantly and continuously called Plaintiff. But these claims require Plaintiff to prove more than just the fact that calls were made.[1] To prove a claim under §§ 1692d and 1692d(5), a plaintiff must show that the repeated calls were made *with the intent* to annoy, abuse, or harass. *See Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009) [emphasis added]. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). However, courts may resolve the question as a matter of law in appropriate cases. *Jeter*, 760 F.2d at 1179-80; *see Arteaga v. Asset Acceptance, LLC*, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010) ("Although there is no bright-line rule, certain conduct generally is found to either constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.").

10.     "In determining liability under § 1692d(5), courts often consider the volume and pattern

---

[1] Southwest denies ever calling the number in question. However, for purposes of Plaintiff's cause of action, **if** calls were made, Plaintiff still must prove more than just the fact that calls were made.

of calls made to the debtor."[2] *Krapf v. Nationwide Credit, Inc.*, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, 2010 U.S. Dist. LEXIS 57849 *6-8 (C.D. Cal. May 21, 2010). However, courts have found that "daily" calls, unaccompanied by other egregious conduct, such as calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop, is insufficient to raise a triable issue of fact for the jury. *Waite v. Financial Recovery Services, Inc.*, No. 8:09-cv-02336-T-33AEP (M.D. Fla. Dec. 16, 2010). For example, "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages." *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009). Also, "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d and § 1692d(5). *See Arteaga*, 2010 WL 3310259, at *16. Finally, while calling 57 times over a 20-day period appeared "somewhat high," defendant's conduct still failed to constitute a violation of § 1692d(5) as a matter of law where defendant left a total of six messages, made no more than seven calls in a single day, did not call back the same day after leaving a message, and did not repeatedly make calls after it was asked to cease. *See Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010); *see Katz v. Capital One*, No. 1:09-cv-1059 (LMB/TRJ), 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010).

11.     Plaintiff has put forth no evidence that Southwest attempted to collect a debt from Plaintiff.   Southwest keeps detailed records of each and every telephone call it makes and

---

[2] "Courts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'" *Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (quoting *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004)).

receives.  Def. App. at 2.  Southwest ran a query on the number Plaintiff provided (214-882-3474) and according to Southwest's records, it has never contacted or attempted to contact Plaintiff.  *Id*.  Southwest has no record of ever calling the purported telephone number and has never attempted to collect a debt from that given number.  *Id*.  Because there is no evidence that Southwest attempted to collect a debt from Fisher, and has never attempted to collect a debt from the provided telephone number, Plaintiff has no evidence of any contact between Plaintiff and Southwest.  Thus, each of Plaintiff's FDCPA alleged violations, including the two added in his First Amended Complaint, fail to survive summary judgment, because Plaintiff has not put forth any evidence supporting such allegations.

12.     Additionally, with respect to Plaintiff's §1692d and §1692d(5) allegations, Plaintiff has no evidence that, even if the calls were made, that the repeated calls were made *with the intent* to annoy, abuse, or harass Plaintiff.  Any calls made from Southwest to Plaintiff were not made with the intent to annoy, abuse, or harass Plaintiff.  Def. App. at 2.  Southwest did not cause a phone to ring repeatedly or engage Plaintiff in telephone conversations with the intent to annoy or harass Plaintiff.  *Id*.  With respect to FDCPA § 1692f, Plaintiff has no evidence that Southwest's actions constituted unfair and unreasonable debt collection practices.  Southwest's records indicate that there is no account with Plaintiff.  *Id*.  Southwest made no calls to Plaintiff. *Id*.  Without any evidence, Plaintiff's FDCPA allegations cannot survive summary judgment.

13.     Because Plaintiff has not put forth any evidence that Southwest contacted him, and that any contact with Plaintiff was made with the intent to annoy, abuse, and harass, or constituted unfair and unreasonable debt collection practices, Plaintiff fails to carry his burden to survive summary judgment.  As such, this Court should render judgment on Plaintiff's each one of his FDCPA claims.

14.     Another important aspect to consider when determining a debt collector's liability under the FDCPA is that the Court's review of the facts is not limited to the defendant's conduct. In *Waite v. Financial Recovery Services*, the court, in evaluating whether the defendant harassed the plaintiff under § 1692d(5), noted that the plaintiff never indicated that she ever confirmed or disputed the debt or made any allegation that she asked the defendant to stop contacting her. *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350, *14 fn. 8 (M.D. Fla. Dec. 16, 2010). The plaintiff argued that the court's inquiry into her actions was inappropriate because it placed a burden on her that was not imposed by the FDCPA. *See id.* The court partially agreed, stating that "whether a valid debt exists does not matter."[3] *Id.* "However, the Court's interest in this point reflects a desire to clarify the issue of whether Defendant intended to 'annoy, abuse, or harass' in violation of § 1692d(5) or whether Defendant, believing Plaintiff's debt to be valid, merely endeavored to collect that debt, and encountered difficulty in establishing contact with Plaintiff." *Id.* "A high volume of unanswered calls without any prior records of substantive conversations between Plaintiff and Defendant tends to suggest a difficulty in reaching Plaintiff rather than an intent to harass."[4] *Id.*; *see Saltzman*, 2009 WL 3190359, at *67- & n. 4 ("the significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with Plaintiff…suggests a 'difficulty of reaching Plaintiff, rather than an intent to harass.'") (quoting *Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, slip op. at 17 (E.D. Mich. Sept. 30, 2008).

15.     In order to determine whether Southwest intended to annoy, abuse or harass Plaintiff in the present case, the Court must consider not only the volume of calls made, but also the pattern

---

[3] (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.").

[4] *See Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009) (a plaintiff must show that the repeated calls were made with the intent to annoy, abuse, or harass, as "Congress did not intend the FDCPA to completely bar any debt collection calls.").

of those calls, whether Southwest engaged in any egregious behavior, and the Court should consider Plaintiff's actions in response to the calls. In this case, Southwest made no calls to the number alleged by Plaintiff. Def. App. at 2. There can be no pattern of harassment. Further, Plaintiff has put forth no evidence of his actions in an effort to cease any alleged debt collection activities. Plaintiff has no evidence that he ever confirmed or disputed the debt or made any allegation that he asked Southwest to stop contacting him. *Id*. Because of this failure, Southwest's Motion for Summary Judgment should be granted.

**C.     Plaintiff's Telephone Consumer Protection Act Claim Does Not Survive Summary Judgment.**

16.     Plaintiff's alleged cause of action under the TCPA states the following:

> It shall be unlawful…to *make any call* (other than a call…made with the prior express consent of the called party) *using any automatic telephone dialing system or an artificial or prerecorded voice*…to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

*See* 47 U.S.C. § 227(b)(1)(A)(iii). The definitions used in this section are very pertinent to the validity of Plaintiff's cause of action:

(a)  Definitions

As used in this section—

(1)  The term "automatic telephone dialing system" means equipment which has the capacity—

(A)  to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B)  to dial such numbers

47 U.S.C. § 227(a)(1).

1.      Southwest Did Not Make Any Calls to Plaintiff

17.      In order for there to be a violation of the TCPA, a call must have been made to Plaintiff

from Southwest.  There is no violation of the TCPA if Southwest did not "make any call" to

Plaintiff.  In this case, Southwest never had any account with Plaintiff, nor did they ever call the

telephone number provided by Plaintiff (214-882-3474).  Def. App. at 2.  Plaintiff has not put

forth any evidence supporting his allegations that a call was made.  Because Southwest never

called Plaintiff, Plaintiff's cause of action under the TCPA does not survive summary judgment.

As such, this Court should grant Southwest's Motion for Summary Judgment with respect to

Plaintiff's TCPA claim.

2.      Southwest's Alleged Calls Do Not Give Rise To A TCPA Claim

18.      The two types of calls regulated by the TCPA which are relevant to debt collection are

calls made to cellular telephones and calls made to residential lines.[5] First, the TCPA exempts

debt collections calls to residential telephone numbers from its coverage.[6] Thus, arguably only

debt collection calls to cell phones are covered by the statute. Section 227(b)(1)(A) prohibits any

calls, other than those for emergency purposes or with the prior express consent of the called

party, "using any automatic telephone dialing system or an artificial or prerecorded voice…to

any telephone number assigned to a…cellular telephone service." See 47 U.S.C. § 227(b)(1)(A).

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce

---

[5] This is, of course, if the TCPA even applies to debt collection calls in the first place, a position ERS contests.
[6] Section 227(b)(1)(B) prohibits the initiation of telephone calls to residential lines using an artificial or prerecorded voice without the prior express consent of the called party, unless it is made for emergency purposes or is exempted by the FCC. In its regulations promulgated pursuant to the TCPA, the FCC exempts, from § 227(b)(1)(B), telephone calls made for commercial purposes that do not include or introduce an unsolicited advertisement or constitute a telephone solicitation. See 47 C.F.R. § 64.1200(a)(2)(iii). The TCPA defines "unsolicited advertisements" as "any material advertising the commercial availability or quality of any property, goods, or services…" and defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services…" 47 U.S.C. § 227(a)(4)-(5). Debt collection calls fall within this exemption because they are commercial calls that do not advertise or offer to sell goods or services. Therefore, debt collection calls to residential lines are not prohibited.

telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1).

a.     *Southwest Does Not Employ an ATDS*

19.     Congress's definition of ATDS specifically separates the origin of the telephone numbers and the dialing of the numbers into two sections. *See* 47 U.S.C. § 227(a)(1)(A) & (B). The first section states that an ATDS is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1)(A). A simple inspection of this section reveals that the phrase "using a random or sequential number generator" modifies the previous phrase, explaining the origin of the "store[d] or produce[d]" telephone numbers. "Generate," from which the word "generator" is derived, means "to bring into existence" or "to be the cause of." *See* "Generate," Merriam-Webster Online Dictionary (2010), http://www.merriam-webster.com/dictionary/generates. This means that the telephone numbers that an ATDS has the capacity to store or produce are those brought into existence, caused, or created randomly or sequentially by the ATDS. This does not include a list of telephone numbers derived from debtors' account notes.

20.     Congress made its intent clear in the language that it used in defining what constituted an ATDS. It prohibited randomly- or sequentially-generating telephone numbers presumably because calling arbitrarily-dialed numbers is more likely to result in calls to emergency facilities, hospital rooms, and wireless telephones than calls made to a predetermined, preprogrammed list of customers, consumers, or debtors. The TCPA's prohibition does not apply to randomly-*dialed* calls from a list of numbers, but to randomly-*generated* numbers. Thus, calling a predetermined list of debtors cannot fulfill the ATDS requirement under § 227(b)(1)(A). By not prohibiting calls to a preset list of telephone numbers and by exempting commercial calls that do not contain

a telephone solicitation or unsolicited advertisement,[7] the TCPA does not apply to these types of debt collection calls.

21.    In order for Plaintiff to survive summary judgment on his TCPA claim, he must establish that there is a genuine issue of material fact with regard to whether or not Southwest utilizes an ATDS.  Plaintiff has no evidence to support his baseless allegations that Southwest employs such a device.   Plaintiff has put forth no evidence that Southwest's equipment had the requisite capacity "to store or produce telephone numbers to be called, using a random or sequential number generator." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Southwest does not employ an ATDS and it does not utilize a system with the requisite capacity to store or produce telephone numbers to be called, using a random or sequential number generator.  Def. App. at 2.  Southwest contacts numbers listed in its account records, as opposed to the randomly generated numbers which the TCPA clearly sought to deter.  *Id*.  Plaintiff must prove that Southwest used a dialing system that randomly generated their cell phone number and that they received these phone calls.  Because Plaintiff has failed to put forth even an indicia of evidence establishing that Plaintiff utilizes an ATDS, or that the calls received originated from Southwest, his claim for relief under the TCPA does not survive summary judgment.  As such, this Court should grant Southwest's Motion.

b.    *Plaintiff Failed to Designate an Expert Necessary to Testify Southwest Uses an ATDS*

22.    Plaintiff's deadline for disclosure of expert testimony was March 28, 2014.  (Doc. No. 15).  Plaintiff has failed to designate an expert to testify that Southwest uses an ATDS. Southwest does not use an ATDS machine and does not employ equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number

---

[7] *See supra*, Footnote 7.

generator.   Def. App. at 2.   Because Plaintiff has failed to designate an expert to rebut Southwest's evidence that it does not employ an ATDS, Plaintiff has failed to carry its burden of proof necessary to survive summary judgment.   As such, this Court should grant Southwest's Motion for Summary Judgment with respect to Plaintiff's TCPA claims.

c.    <em>Southwest Did Not Use an Artificial or Prerecorded Voice</em>

23.    The only remaining type of debt collection call that could possibly violate the TCPA is one that uses an artificial or prerecorded voice and is made to one of the prohibited destinations under § 227(b)(1)(A). Plaintiff, in the present case, alleges that "[w]hen Plaintiff answered the calls from SCS, he was told by a prerecorded voice to 'please hold.'"  (Doc. No. 16 at ¶ 39).  He then goes on to allege that "[o]nly after a period of time would he then be connected to a live representative."  <em>Id</em>.   However, Plaintiff has failed to put forth any evidence there was an artificial or prerecorded voice, that the alleged recording of "please hold" is sufficient for a TDCA violation, when it is immediately followed by a live representative, and that the telephone call originated from Southwest.   As stated earlier, Southwest never called the number provided by Plaintiff.  Def. App. at 2.  Southwest has no account with Matthew Fisher.  <em>Id</em>.  Further, Southwest does not utilize an artificial or prerecorded voice when calling cell phones when collecting its debts.  <em>Id</em>.  Because Plaintiff has no evidence that an artificial or prerecorded voice was used, his TCPA claim fails to survive summary judgment.

24.    Southwest keeps detailed records of each and every call it makes.  Def. App. at 1. Southwest ran a query in its records and shows no results for the number 214-882-3474.  Def. App. at 2.  Because there is no record of the number provided and because Southwest keeps detailed records of every telephone call it makes, Southwest never made a telephone call to Plaintiff.  In order for there to be a violation of the TCPA, there has to be a call made.  47 U.S.C.

§ 227(b)(1)(A)(iii).   Because Southwest never made a call to 214-882-3474, there can be no violation of the TCPA.  As such, Plaintiff's TCPA claim fails to survive summary judgment and this Court should grant Southwest's Motion to render judgment on his claims.

**D.      Plaintiff Has No Evidence He Suffered Actual Damages**

   1.  <u>Standard for Recovering Actual Damages Under the FDCPA</u>.

25.     Generally, the FDCPA permits recovery of actual damages for emotional distress. *Davis v. Creditors Interchange Receivable Mgt.*, 585 F.Supp.2d 968, 971 (N.D. Ohio 2008). Section 1692k(a)(1) of the FDCPA allows an award of "any actual damages sustained by such person as a result of such failure" to comply with the statute. *See id.* at 971. The Federal Trade Commission Commentary to the FDCPA states that these "actual damages" for FDCPA violations include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress" as well as "out-of-pocket expenses." *Id.* (citing Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 3, 1988) (Section 813 – Civil Liability)). However, "an FDCPA actual damages rule must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices." *Davis v. Creditors Interchange Receivable Management*, 585 F.Supp.2d 968, 976 (N.D. Ohio 2008) (pointing out that "debt collection…is an inherently stressful experience for the consumer").

26.     In order to do so, a plaintiff must do more than "rel[y] solely on his own conclusory statements of emotional distress." *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (finding plaintiff's testimony" that he was "humiliated and embarrassed," it was "mentally and emotionally distressful when dealing with credit reporting agencies," and that it was "embarrassing to go somewhere and have them check your credit report and see all the stuff on there" was insufficient to prove actual damages). Thus, when the "plaintiff's own testimony is

his only evidence of emotional damages, 'he must explain the circumstances of his injury in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions." *Wantz*, 386 F.3d at 834; *see Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (noting that the Seventh Circuit "maintain[s] a strict standard for a finding of emotional damage because they are so easy to manufacture.").

27.     In addition, "a plaintiff must link the violation of the statute to the alleged harm." *Konter v. CSC Credit Services, Inc.*, 606 F.Supp.2d 960, 967-70 (W.D. Wis. 2009). Thus, the plaintiff must "produce[] evidence that draws a direct or causal link between defendant's actions and the emotional injury plaintiff suffered." 606 F.Supp.2d at 969 (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001).

> 2.     Plaintiff Fails to Offer Sufficient Evidence Supporting His Claim for Actual Damages.

28.     Plaintiff's Complaint seeks recovery for actual damages suffered from Southwest's alleged conduct.  (Doc No. 16 at 5).  Plaintiff alleges that as a result of Southwest's alleged actions, he suffers from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.  *Id.*

29.     Plaintiff has not alleged that he sought any psychologist or therapist care for his alleged mental anguish and damages.  He has not alleged that he has sought any pastoral counseling in regards to the alleged actions by Southwest.  He has not alleged that he has seen his doctor or reported to his doctor about any of his feelings related to the underlying facts in this lawsuit. Plaintiff has provided only conclusory statements that Southwest's actions have caused him

actual harm, without any supporting evidence.

30.     Further, Plaintiff has failed to designate any experts to testify to his actual damages.  The deadline for Plaintiff's disclosure of expert testimony was March 28, 2014.  (Doc. No. 15). Whether Southwest's actions gave rise to actual damages, testimony to the existence and extent of these damages should be given by a knowledgeable expert in those fields according to *Daubert* and *Robinson*. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995).  Unfortunately, Plaintiff is prohibited from producing any expert testimony regarding the cause of his alleged damages due to missing the deadlines to designate experts.  Plaintiff's own statements are insufficient to recover the actual damages that he is alleging.  Because Plaintiff has failed to designate any experts to testify as to his actual damages, these damages cannot be established.  As such, this Court should render judgment on Plaintiff's claims for actual damages.

**E.     Plaintiff Has No Evidence to Recover Attorney's Fees**

31.     Plaintiff has failed to designate his expert witnesses by the date specified by this Court's Scheduling Order.  (Doc. No. 15). The Scheduling Order specifies March 28, 2014 as the date for experts for parties seeking affirmative relief.  *Id.*  Plaintiff did not name experts prior to the deadline, and is prevented from using expert testimony at trial.  Plaintiff has failed to designate any experts to testify as to whether his attorney's fees were reasonable and necessary.  Because Plaintiff failed to designate any expert testimony in compliance with this Court's scheduling order, he is not entitled to recover the damages sought.   As such, this Court should render judgment on Plaintiff's claim to recover his attorney's fees.

**IV.**
**CONCLUSION**

32.   Plaintiff fails to provide any evidence creating a genuine issue of material fact that Southwest violated the FDCPA or the TCPA.  Southwest's account notes indicate that Plaintiff never had an account with Southwest and that there was never any call made to Plaintiff or the number which Plaintiff alleges was contacted.  <u>Def. App.</u> at 2.  Further, Southwest does not employ the use of an ATDS, and Plaintiff has failed to put forth any evidence to rebut this fact.

33.   With respect to damages, Plaintiff's deadline to disclose his experts passed on March 28, 2014, without any designation by Plaintiff.  (Doc. No. 15).  An expert's testimony is required to prove Plaintiff's claim for actual damages and in order to recover his attorney's fees. Because this deadline has passed, and no designation was made by Plaintiff, judgment should be rendered on these claims in Southwest's favor.

34.   Because Plaintiff has no evidence to support any of his claims for a TCPA or FDCPA violation, this Court should render judgment and grant Southwest's Motion for Summary Judgment.

WHEREFORE PREMISES CONSIDERED, Southwest Credit Systems, L.P. respectfully requests that the Court Grant its Motion for Summary Judgment in its entirety and for such other and further relief to which it may be justly entitled.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

**ROBBIE MALONE, PLLC**


  /s/Robbie Malone_____
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
DREW JONES
State Bar No. 24083269
Email: djones@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231
TEL: (214) 346-2630
FAX: (214) 346-2631

*COUNSEL FOR DEFENDANT*


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via ECF on this 25th day of April, 2014 to:


**Jody B. Burton**
Lemberg & Associates, LLC
1100 Summer Street, 3rd Floor
Stamford, CT  06905
(203) 653-2250
(203) 653-3424
jburton@lemberglaw.com


                              /s/Drew Jones_____
                              DREW JONES